## Napier v. Commonwealth.

(Decided June 10, 1930.)

CAUDILL & TACKETT for appellant.

J. W. CAMMACK, Attorney General, and S. B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

The appellant, A. C. Napier, at his trial under an indictment in the Floyd circuit court charging him with embezzlement as denounced by section 1202 of our present Kentucky Statutes, was convicted and punished by confinement in the penitentiary for one year, and, complaining of the verdict and judgment pronounced thereon, he prosecutes this appeal, after his motion for a new trial was overruled. A number of grounds were stated in the motion for a new trial, as alleged errors sufficient to reverse the judgment, but only one of them we deem it necessary to discuss and determine, and which is, that the court erred in its failure to peremptorily instruct the jury to return a verdict of acquittal.

Appellant was a member of the mercantile partnership of Floyd Napier & Son, conducting a retail store at Garrett, Ky., in Floyd county. They bought large quantities of feed, meal, flour, bran, etc., from a corporation operating a grist mill in Winchester, Ky., under the corporate name of Winchester Roller Mill, and some time in December, 1927, that corporation organized a subsidiary one, the name of which was Merchants' Warehousing Corporation of Winchester, Ky., all of the stockholders in which were those in the Winchester Roller Mill. The charter of the subsidiary corporation is not in the record, but from what appears therein its business was to operate a chain of warehouses located in localities where the roller mills had customers and to which the latter shipped its products in large quantities for storage in the local warehouse of the warehousing company. In other words, it was but a means of carrying out a plan adopted by the roller mill whereby its products would be handled without making shipments in small quantities directly to its customers engaged in business in the particular locality where the warehouse was situated. It does not appear that it had any customer in Garrett or in that vicinity except Floyd Napier & Son, the latter of whom was appellant.

Shortly after the organization of the subsidiary corporation, it rented from Floyd Napier & Son an abandoned dwelling house for its warehouse in Garrett, and at the same time it employed appellant to look after and manage the warehouse as well as the goods that might be shipped and stored therein. The rental for the warehouse was the nominal sum of $5 annually and the agreed compensation to appellant for his services as such alleged agent was also $5 per annum. The warehouse was situated on the bank of a creek and extended beyond the bank partially into the creek, being supported by some sort of pillars, but its floor was not above flood tide of the creek. After the arrangements as outlined were perfected, the Winchester Roller Mill shipped to Garrett in the name of the warehouse a carload of its produce, consisting of the articles above specified, and the bill of lading was sent to Floyd Napier & Son, and, according to the proof, the invoice price of that shipment was also charged to that firm. Appellant, and perhaps his father, superintended the unloading of that shipment and the putting of it into the rented warehouse which belonged to the firm, but nominally rented by the warehouse company. As the firm would need any of the contents of the warehouse, they were taken out, and later a check of the firm would be mailed to the Winchester Roller Mill at its place of business.

Some time in the spring following the shipment of merchandise referred to, there was a heavy rain in that vicinity, and the creek along which, and partially in which, the warehouse was situated, greatly overflowed, and water got into the warehouse and destroyed a considerable part of the goods stored therein, and to such an extent that a large portion of them, according to the uncontradicted proof, was hauled away and thrown into a creek after partially producing a local nuisance because of fermentation. In the meantime the firm of Floyd Napier & Son had remitted to the Winchester Roller Mill two checks, one for $260 and the other for $495.65, and they later issued their check payable to the same firm for $300, leaving unpaid a balance of $461.10 of the invoice price of the entire shipment when made, and which was $1,438.75; the shipment being made on January 4, 1928. After the destruction of some of the contents of the warehouse by the flooding of the creek, some of the goods composing the original shipment still remained, and a repre-

sentative of the roller mill visited the place, followed by the issual of the firm's last check of $300, which appellant contended was all of the shipment for which he should be accountable, but stated, in substance, to the representative that upon a final settlement, if he owed any balance, he would pay it. No settlement of any kind was ever made, and this indictment followed in which appellant was charged with collecting, as agent of the warehouse company, $461.10, and fraudulently and feloniously appropriating it to his own use without the consent of the owner and with the intention of permanently depriving the latter of it. Further details concerning the relationship created by the adopted arrangement are not necessary, since its substantial features are as we have outlined, and from which it readily will be perceived that the crime charged in the indictment was wholly unproven.

A copy of the written contract employing appellant as the nominal agent of the warehouse company in Garrett, Ky., at the nominal salary of $5 per annum, appears in the record, and from its contents (which are extremely ambiguous), as explained by the uncontradicted testimony in the case, it clearly appears that the arrangement was merely a form by which Floyd Napier & Son, the only customer at Garrett, Ky., of the Winchester Roller Mill, could replenish their stock without making orders as needed, and for that reason the shipment to the local warehouse company and its storage in the local warehouse were made, and appellant was put in charge thereof as indicated. It is therefore our firm conclusion that the actual transaction was but a sale of the carload of merchandise to Floyd Napier & Son, but to be paid for as they took goods from the warehouse, and under the terms of the contract they were to pay the prevailing wholesale price at the time the goods were taken from the warehouse, and not the original invoice price at the time of the shipment, although it is the balance of the latter that it is now contended the appellant embezzled. That the arrangement created only the relationship of debtor and creditor between the Roller Mill Company and Floyd Napier & Son, according to the proof in the record, is perfectly apparent, and makes the case very much analogous in its facts to those involved in the case of Commonwealth v. Abele, 160 Ky. 800, 170 S. W. 191, in which it was held that the alleged embezzler was nothing more than a creditor of the corporation whose property he was charged with embezzling.

But, however that may be, the indictment in this case charges appellant with embezzling *money* to the amount of $461.10. It is alleged that this was the property of the warehousing company, and that appellant was its agent, and lawfully came into the custody of the *money* with which he is charged with embezzling. There is not an intimation in the record that appellant ever collected any amount whatever, either from the firm of which he was a member, or from any other firm or individual, for the price of any of the goods stored in the warehouse; or that he ever handled a cent representing any part of the purchase price for any of it. On the contrary, the proof shows without contradiction that the only retail firm to which any of the contents of the warehouse were ever delivered was Floyd Napier & Son. It is not shown that such firm ever paid to appellant as agent any amount whatever for any goods that it took from the warehouse. On the contrary, all of it was paid for by remittances by checks of the firm to the Winchester Roller Mill, and the uncontradicted proof in the case showed that the remainder of the goods (with the exception of a small quantity not so withdrawn) were destroyed by the flood. But, if not so, there is no proof that appellant ever appropriated to his own use a single article of merchandise over which he had charge as alleged agent.

If, however, it were otherwise, then the peremptory instruction should have been given, since appellant is not charged in the indictment with fraudulently and feloniously converting *goods, wares, and merchandise* in his possession as agent of the subsidiary warehousing company, but with fraudulently and feloniously appropriating a *specified* amount of money belonging to his principal; and no one pretends, nor was there any effort to show, that he ever converted that or any other amounts of *cash* belonging to his principal, and for which reason also the court should have peremptorily instructed the jury to return a verdict of acquittal. If the record contained testimony showing that appellant had sold goods from the warehouse, either to his firm or to other dealers, and had collected the price therefor and failed to make remittances to his principal, or to otherwise satisfactorily account therefor, then a different case would be presented; but, in the absence of such facts, there was an entire failure of proof.

Wherefore the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.